# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# LITTLE ROCK DIVISION

**BETTY J. DUNKWU**                                               **PLAINTIFF**

v.                     No. 4:17-CV-00284-KGB-JTR

**NANCY A. BERRYHILL,**
**Deputy Commissioner for Operations,**
**performing the duties and functions**
**not reserved to the Commissioner**
**of Social Security Administration**                    **DEFENDANT**

## RECOMMENDED DISPOSITION

**I.**      **Procedures for Filing Objections:**

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**II.**      **Introduction:**

Betty Dunkwu ("Dunkwu") applied for social security disability benefits with an amended alleged disability onset date of July 12, 2014. (R. at 33). The

administrative law judge ("ALJ") held a hearing and denied her applications. (R. at 24). The Appeals Council denied review. (R. at 1). Dunkwu has requested judicial review.

For the reasons stated below, the magistrate judge recommends reversing and remanding the Commissioner's decision.

### III. The Commissioner's Decision:

The ALJ found that Dunkwu had the severe impairments of diabetes mellitus, arthropathy, degenerative disk disease, obesity, and a broken shoulder. (R. at 18). According to the ALJ, these impairments left Dunkwu with the residual functional capacity ("RFC") to perform medium work, except that she could only occasionally stoop, crouch, and perform work overhead bilaterally and frequently handle and finger bilaterally. (R. at 20).

After hearing testimony from a vocational expert ("VE"), the ALJ found that Dunkwu could return to her past relevant work as a mental retardation aide or a nurse assistant. (R. at 23). Thus, the ALJ held that Murray was not disabled. (R. at 23–24).

### IV. Discussion:

Dunkwu argues that the ALJ failed to fully and fairly develop the record, erred in assessing her credibility, erred in determining her RFC, and failed to resolve conflicts in the VE's testimony. Because the Court concludes that the ALJ failed to

fully and fairly develop the record, it is not necessary to reach and discuss the other alleged errors committed by the ALJ.

An ALJ has a duty to fully and fairly develop the record independent of the claimant's burden to present her case. *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017). If a critical issue is under-developed, the ALJ must seek additional evidence. *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011). Dunkwu argues that the ALJ failed to fully and fairly develop the record because he gave great weight to the opinions of non-examining reviewing physicians and proceeded to reach and decide the merits of her claim of disability without any opinions or other evidence from a treating or examining physician.

The medical record in this case contains no opinion from a treating or examining physician concerning the effect of Dunkwu's physical impairments on her ability to work. The ALJ gave great weight to the opinions of two reviewing physicians (state agency medical consultants, David L. Hicks, M.D., and James Wellons, M.D.) who had scant medical evidence to review in formulating their opinion about how Dunkwu's physical impairments affected her ability to work. (R. at 22). As a result, the ALJ chose to substitute his own medical judgment for that of a treating or examining physician, and, in doing so, failed to properly evaluate all of Dunkwu's physical limitations.

For example, the ALJ discounted Dunkwu's carpal tunnel syndrome as non-severe because he concluded she had the condition for less than twelve months. (R. at 19). However, medical records indicate that Dunkwu had been diagnosed with carpal tunnel syndrome three years earlier. (R. at 454). Those medical records call into question the ALJ's conclusion that Dunkwu's carpal tunnel syndrome is not a severe impairment because it did not satisfy the twelve-month durational requirement.

Additionally, an ALJ is required to account for all of a claimant's impairments, both severe and non-severe, in assigning an RFC. *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008). It is not clear whether the ALJ considered Dunkwu's carpal tunnel syndrome in assigning limitations. The ALJ noted that Dunkwu's "degenerative impairments and diabetes" limited her to medium work with manipulative limitations, seemingly excluding carpal tunnel syndrome from consideration. (R. at 22).

The ALJ discussed results of diagnostic testing and progress on Dunkwu's recovery from right shoulder arthroscopy with a distal clavicle resection for acromioclavicular joint arthritis. (R. at 21–22, 433). The ALJ specifically noted results of "normal muscle tone, muscle strength, and gait, intact sensation, and negative straight leg test" as supporting his conclusion that Dunkwu had the RFC to perform a reduced range of medium work. However, it is unclear how these findings

4

relate to the amount of weight Dunkwu can lift or carry or her ability to perform manipulative functions. Without any medical evidence from a treating or consulting physician about how those limitations, in combination, affected Dunkwu's ability to work, the ALJ was left to substitute his own medical judgment about how those severe and non-severe impairments impacted Dunkwu's RFC. The medical records consist entirely of (1) office examination notes (R. at 312, 320–23, 327–56, 382–87, 426–27, 429–32, 456–68); (2) physical therapy progress notes (R. at 441–55); (3) right shoulder arthroscopy records (R. at 317, 433–34); (4) colonoscopy records (R. at 324–26); (5) a sonography report (R. at 362); (6) emergency room visit records for a fall on her shoulder, a car accident, shoulder pain, a cat bite, and a headache and neck pain, respectively (R. at 388–93, 394–97, 398–401, 402–07, 408–12); humerus fracture treatment records (R. at 422–25); (7) raw blood and laboratory diagnostic test results (R. at 313–16, 357, 360–61, 363–68, 371–73, 376–78, 428); (8) mammogram results (R. at 319, 369); (9) pathology reports concerning a distal clavicle resection (R. at 358–59, 435–37); (10) a cervical spine radiology report (R. at 374); (11) a lumbar spine MRI report (R. at 469); and (12) a single mental consultative examination. (R. at 413–20). None of these records contain specific physical limitations. There is nothing, aside from the non-examining consultants' opinions, to support the effect Dunkwu's physical impairments had on her ability to

work. Thus, the Court concludes that the record is under-developed regarding numerous issues related to the proper evaluation of Dunkwu's RFC.

V.     **Recommended Disposition:**

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. After reviewing the entire record, the Court concludes that the record as a whole does not contain ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales,*, 402 U.S. 389, 401 (1971).

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED with instructions to develop the medical record as necessary, including obtaining the opinion of a consulting physician, and to fully consider all of the relevant medical evidence in evaluating Dunkwu's impairments and arriving at her RFC.

DATED this 18th day of October, 2018.

_____
UNITED STATES MAGISTRATE JUDGE